IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 7, 2004

## STATE OF TENNESSEE v. CHARLES ELDRIDGE

**Direct Appeal from the Criminal Court for Putnam County**
**No. 02-0322     Lillie Ann Sells, Judge**

────────────

**No. M2003-01771-CCA-R3-CD - Filed April 20, 2004**

────────────

The defendant appeals the revocation of his probation, arguing there was no substantial evidence he violated the terms of his probation, the trial court erred in allowing his probation officer to testify that he failed a drug screen, and the reinstatement of his original sentence resulted in too harsh a punishment under the circumstances of his case. Based on our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ROBERT W. WEDEMEYER, J., joined.

David Neal Brady, District Public Defender, and H. Marshall Judd, Assistant Public Defender, for the appellant, Charles Eldridge.

Paul G. Summers, Attorney General and Reporter; Thomas E. Williams, III, Assistant Attorney General; William Edward Gibson, District Attorney General; and Benjamin W. Fann, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

On October 29, 2002, the defendant, Charles Eldridge, was convicted by a Putnam County Criminal Court jury of simple possession of marijuana and violation of the implied consent law. He was subsequently sentenced by the trial court to eleven months, twenty-nine days, with the trial court placing him on supervised probation and suspending all but thirty days of the sentence, which were ordered to be served on weekends in the county jail. Although a list of the conditions of the defendant's probation is not included in the record before this court, he was apparently required to submit to regular drug screens.

On April 12, 2003, a probation violation warrant was issued against the defendant, alleging that he had tested positive for marijuana on April 4, 2003, and had been ordered to return on April 7, 2003, to pay the confirmation fee to send his urine sample to the laboratory but had not returned. At the June 17, 2003, probation violation hearing, the defendant's probation officer, Michael Wright, testified that the defendant was placed on probation on December 13, 2002. Two months later, on February 13, 2003, the defendant was scheduled for a drug screen but refused to provide the urine sample, stating that he was unable to do so because of a medical condition. Wright testified he told the defendant he could return with a doctor's note, but otherwise, his refusal to submit would constitute a violation of his probation. He said the defendant later returned with a note stating that he had gone to the doctor's office, but had not been seen by a doctor. Consequently, on February 24, 2003, Wright issued a violation warrant for the defendant's refusal to submit to the drug screen.

Wright testified the defendant tested positive for marijuana on a field test administered on April 4, 2003. He said he informed the defendant he would have to send the field test to the laboratory for confirmation, that the defendant was responsible for the $35 confirmation fee, and that his refusal to pay would result in a violation of probation. He said the defendant never returned to pay the fee, and a probation violation report was issued on that basis. Wright testified an additional probation violation report was issued on the defendant on March 20, 2003, based on his failure to report on February 28, 2003, for his weekend service at the jail.

On cross-examination, Wright testified the defendant brought him a doctor's note after the violation report based on his failure to submit to the drug screen was issued. The note stated that the defendant had "urinary symptoms" but did not elaborate about the nature of his problem. Wright said he was aware of "a body lice problem" at the jail, but his understanding from conversations with jail officials was that it was not the policy of the jail to turn an individual with body lice away from serving weekend time, but instead to remove the individual from the general population. Wright said the defendant told him at the time he requested the laboratory confirmation fee, which was a Friday, that he did not have the money. He was fairly confident he had told the defendant he could bring his money the following Monday; however, it was possible he might have said the following day. He acknowledged the defendant passed drug screens on May 15 and June 5, 2003.

In response to questioning by the trial court, Wright testified that the defendant explained his failure to return with his confirmation fee at his next report date by stating that he had not had the money. However, the defendant changed his story by the following report date, stating that Wright had told him to return the following day but that the office had been closed when he had shown up on Saturday to pay the fee.

The defendant testified he was experiencing urinary tract problems, in the form of a kidney stone, on the day he failed to submit his urine sample. He said he went to his doctor's office immediately after leaving the probation office, but was unable to see the doctor until approximately two weeks later, when he was treated for his problem. In support of his claim, the defendant submitted a statement from the "Livingston Clinic," dated February 25, 2003, which referred to his

having passed a kidney stone on February 15, 2003.[1] With respect to his failure to report for his weekend jail service, the defendant testified he had telephoned the jail and received permission from "Matt Farmer" to be absent that weekend because he had body lice. As for his failure to pay the confirmation fee for sending his urine sample to the laboratory, the defendant testified that Wright told him to return the next day and that he did so on five separate occasions, only to find the office closed each time. He testified he did not return on Monday because Wright had "specifically stated tomorrow," and "[t]omorrow when [he] went to school . . . means the following day, not three or four days later."

The trial court found by a preponderance of the evidence that the defendant had violated the terms of his probation by failing to report for his weekend jail service and by failing to pay the fee to have his April 4, 2003, drug field test sent to the laboratory for confirmation. Accordingly, the trial court revoked the defendant's probation and ordered that he serve his original eleven-month-twenty-nine-day sentence in jail, with credit given for time already served.

## ANALYSIS

The defendant argues that substantial evidence was not presented to show he violated the terms of his probation, the trial court erred in allowing Wright to offer prejudicial testimony that he failed his drug screen, and full revocation of his probation was unduly harsh "considering the nature of the violation and Defendant's explanation." The State argues that the trial court acted within its discretion in revoking the defendant's probation and reinstating his original sentence. We agree with the State.

A trial court is granted broad authority to revoke a suspended sentence and to reinstate the original sentence if it finds by the preponderance of the evidence that the defendant has violated the terms of his or her probation and suspension of sentence. Tenn. Code Ann. §§ 40-35-310, -311 (2003). The revocation of probation lies within the sound discretion of the trial court. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991); State v. Stubblefield, 953 S.W.2d 223, 226 (Tenn. Crim. App. 1997); State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). To show an abuse of discretion in a probation revocation case, "a defendant must demonstrate 'that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred.'" State v. Wall, 909 S.W.2d 8, 10 (Tenn. Crim. App. 1994) (quoting State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)). The proof of a probation violation need not be established beyond a reasonable doubt; it is sufficient if it allows the trial court to make a conscientious and intelligent judgment. Harkins, 811 S.W.2d at 82 (citing State v. Milton, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984)). We review this issue, therefore, for an abuse of discretion.

In support of his argument that there was no substantial evidence to support the revocation of his probation, the defendant cites his own testimony that he received permission from a jail

---

[1]Wright informed the trial court that the defendant had never shown him this statement.

administrator to miss his weekend in jail due to his body lice problem. However, the defendant's probation officer testified that jail officials informed him that it was not the jail's policy to turn away an individual with body lice from serving his weekend sentence. The officer additionally testified that the defendant never paid the required fee for sending his urine sample to the laboratory for confirmation, despite being informed that failure to do so would result in a violation of probation. In both its oral findings of fact and in its written order revoking probation, the trial court specifically noted that it did not find the defendant's testimony credible. At the conclusion of the hearing, the trial court stated:

> All right, well [Defendant], the court finds by a preponderance of the evidence that you violated your probation in this case. You know, if there was only one part of this that was misunderstood, I would give you the benefit of the doubt. But I've sat here and watched you and listened and I tell you what, well I make the finding that you failed to report to serve your jail sentence as ordered by this court. And as these lawyers know and I'm sure that most defendant's [sic] know and I made it very clear to you when we did the sentencing hearing and the conditions of your probation that you report to serve your sentence as ordered by this court and I find that you failed to do so and that you've violated your probation.

> [Defendant], I also find that [Defendant's] testimony is not credible. I find the officer's testimony to be credible. I find his testimony not credible and this is where you ran into problems, [Defendant]. When you testified that this officer, first of all I believe the officer. He testified that you first came in there and said well I didn't come back with this thirty five dollars because I didn't have thirty five dollars and then he said that you changed your story from what you said here today that he told you that it was on the wrong date. You told me that, you testified under oath you went back five times on Saturday and on Monday you didn't bother to go back once [sic] single time. And I find that incredible and I find it not credible. I find it not credible.

The preponderance of the evidence supports the trial court's finding that the defendant violated the terms of his probation both by his failure to report for his jail service and by his failure to pay the fee to send his urine sample to the laboratory for testing.

The defendant also argues that the trial court erred by allowing his probation officer to testify that he failed his drug field test by testing positive for marijuana. The State responds by arguing that any error in admitting the testimony was harmless because the defendant has not established that his revocation was based on the positive field test or that he was prejudiced by the admission of the evidence. We again agree with the State.

-4-

For this argument, the defendant relies on Tennessee Code Annotated section 40-35-311(c)(1) (2003), which lists the requirements for a laboratory report of a defendant's drug test to be admitted in a probation revocation hearing in lieu of testimony by the technician who performed the test. No laboratory report was prepared here, much less admitted, because the defendant failed to submit the fee required to send his urine sample in for laboratory testing. The defendant's probation officer explained to the trial court that the probation office's procedure was to send urine samples to the laboratory, thus requiring payment of the confirmation fee, only when the results of a defendant's field test were positive. In its order revoking probation, the trial court found that, in addition to his failure to report to serve his jail time, the defendant had violated his probation by his failure "*to cooperate* with his probation officer regarding a April 4, 2003, drug field test." (emphasis added). Notably, the trial court did not find that the defendant had violated his probation by *failing* the field drug test. We conclude, therefore, that the trial court did not err in admitting the officer's testimony about the positive field test results, which explained why the defendant was required to pay the confirmation fee for sending his urine sample to the laboratory for testing.

Finally, the defendant argues that a reinstatement of his original sentence results in too harsh a punishment given the nature of his violation. We respectfully disagree. The trial court is granted broad discretion to revoke a defendant's probation and reinstate the original sentence upon a finding by a preponderance of the evidence that he violated the terms of his probation. See Tenn. Code Ann. §§ 40-35-310, -311 (2003). The defendant violated the terms of his probation not only by failing to pay to have his urine sample sent to the laboratory for testing, but also in a more fundamental way by failing to report for his weekend jail service, which was a condition of his sentence that the trial court apparently made abundantly clear to him at sentencing.

## CONCLUSION

We find no abuse of discretion by the trial court in revoking the defendant's probation and reinstating his original sentence. Accordingly, we affirm the judgment of the trial court. Although the record reflects that the defendant is free on a $1000 bond, we note that the trial court entered an order on June 18, 2003, setting the defendant's appeal bond at $3000. Therefore, in the event the defendant indicates an intention to file an application for permission to appeal to the Tennessee Supreme Court, he may be admitted to bail in the amount of $4000.

_____
ALAN E. GLENN, JUDGE